1  McGREGOR W. SCOTT
   United States Attorney
2  AUDREY B. HEMESATH
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, California 95814
4  Telephone: (916) 554-2729

5  Attorneys for Applicant
   United States of America
6



FILED

SEP 17 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
          DEPUTY CLERK

7

8              UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10                              2 0 8 - MC - 1 1 2 MCE GGH

11  REQUEST FROM CHINA PURSUANT   )  MISC
    TO THE AGREEMENT BETWEEN      )
12  THE PEOPLE'S REPUBLIC OF CHINA )
    AND THE UNITED STATES OF      )  ORDER APPOINTING COMMISSIONER
13  AMERICA ON MUTUAL LEGAL       )  PURSUANT TO 28 U.S.C. § 1782
    ASSISTANCE IN CRIMINAL        )
14  MATTERS IN THE MATTER OF      )  (FILED UNDER SEAL)   GGH
    Z.B.                          )
15                                )
                                  )
16  _____   )

17        Upon application of the United States of America, by and through Assistant United States

18  Attorney Audrey B. Hemesath, pursuant to the Agreement between the Government of the United

19  States of America and the Government of the People's Republic of China ("PRC") on Mutual

20  Assistance in Criminal Matters, entered into force March 8, 2001, State Dept. No. 01-44, 2001 WL

21  459083 (the "Agreement"), Assistant U.S. Attorney Audrey B. Hemesath is appointed Commissioner of

22  this Court, as is any such other Assistant United States Attorney as may be subsequently designated by

23  the United States Attorney, to obtain the evidence requested in the treaty request from the People's

24  Republic of China (a copy of which is attached to the government's application as Exhibit B).

25        IT IS FURTHER ORDERED that the Commissioner may take such steps as are necessary to

26  obtain the requested evidence in this district in conformity with the request. These steps may include

27  the issuance of compulsory process in the form of one or more Commissioner's subpoenas, concerning

28  tax records and articles of incorporation relating to these two companies:

                              1

1    1) BGE International;

2    2) America NK International.

3    In the event that the taking of testimony is required in the course of this investigation, the

4 Commissioner may administer oaths to witnesses or oversee the administration of oaths by a certified

5 shorthand reporter. In obtaining the evidence, the Commissioner ~~is not required to~~ shall follow the Federal

6 Rules of Civil Procedure. The following rules shall also govern:

7    A.    The Commissioner need not give notice of the taking of evidence to actual or potential

8           parties in the foreign proceeding, nor need the Commissioner provide such parties with

9           the evidence taken.

10    B.    ~~The Commissioner may take the evidence in accordance with such rules and procedures~~

11          ~~as the requesting authorities in the PRC may prescribe.~~

12    C.    The Commissioner may seek such further orders of this court as may be necessary to

13           execute the treaty request.

14    IT IS FURTHER ORDERED that in the taking of evidence the Commissioner may be

15 accompanied by persons who presence is authorized by the Commissioner, including without limitation

16 Special Agents of the Federal Bureau of Investigation and/or representatives of the PRC.

17    IT IS FURTHER ORDERED that any financial institution that receives a Commissioner's

18 subpoena shall not disclose to any customer: the existence of the Commissioner's subpoenas(s) or the

19 PRC's request, the bank's production of records or the giving of a statement by any bank employee, or

20 any aspect of the PRC's investigation.

21    IT IS FURTHER ORDERED that the Commissioner is authorized to certify any evidence

22 obtained in conformity with the request, to transmit such evidence to the Office of International Affairs,

23 United States Department of Justice, for communication to the proper authorities in the PRC, and to do

24 all else that may be necessary for the accomplishment of the purposes of this Order.

25    ///

26    ///

27

28

1  IT IS FURTHER ORDERED that the Application and this Order shall be maintained under seal

2  unless and until this Court orders otherwise. The Commissioners may disclose copies of this Order as

3  necessary to accomplish the purpose of the request for assistance, notwithstanding this Order's filing

4  and maintenance under seal.

5  Dated: July 30 , 2008  ✶

6
                                    GREGORY G. HOLLOWS
7                                   _____
                                    GREGORY G. HOLLOWS
8                                   United States Magistrate Judge

9
   Presented by:
10

11
   AUDREY B. HEMESATH
12 Assistant United States Attorney

13 Attorney for Applicant
   United States of America
14

15 ✶ Documents themselves may be filed, if necessary,
16  and for good cause shown, under seal.

17

18

19

20

21

22

23

24

25

26

27

28

                                    3

**Attachment A**

Signed June 19, 2000

[entered into force March 8, 2001]

AGREEMENT BETWEEN
THE GOVERNMENT OF THE PEOPLE'S REPUBLIC OF CHINA
AND
THE GOVERNMENT OF THE UNITED STATES OF AMERICA
ON MUTUAL LEGAL ASSISTANCE IN CRIMINAL MATTERS

The Government of the People's Republic of China and the Government of the United States of America, hereinafter referred to as "the Parties,"

Desiring to improve the effectiveness of cooperation between the two countries in respect of mutual legal assistance in criminal matters on the basis of mutual respect for sovereignty, equality and mutual benefit,

Have agreed as follows:

## Article 1

### Scope of Application

1.    In accordance with this Agreement, the Parties shall provide mutual assistance in investigations, in prosecutions, and in proceedings related to criminal matters.

2.    Assistance shall include:

a)    serving documents;

b)    taking the testimony or statements of persons;

c)    providing originals, certified copies or photocopies of documents, records or articles of evidence;

d)    obtaining and providing expert evaluations;

e)    making persons available to give evidence or assist in investigations;

f)    locating or identifying persons;

g)    executing requests for inquiry, searches, freezing and seizures of evidence;

h)    assisting in forfeiture proceedings;

i)    transferring persons in custody for giving evidence or assisting in investigations; and

j)    any other form of assistance which is not contrary to the laws in the territory of the Requested Party.

3.    This Agreement is intended solely for mutual legal assistance between the Parties. The provisions of this Agreement shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request.

2

## Article 2

### Central Authorities

1.    Each Party shall designate a Central Authority to make and receive requests pursuant to this Agreement.

2.    For the People's Republic of China, the Central Authority shall be the Ministry of Justice.  For the United States of America, the Central Authority shall be the Attorney General or a person designated by the Attorney General.

3.    The Central Authorities shall communicate directly with one another for the purposes of this Agreement.

## Article 3

### Limitations on Assistance

1.    The Central Authority of the Requested Party may deny assistance if:

a)    the request relates to conduct that would not constitute an offense under the laws in the territory of the Requested Party, provided that the Parties may agree to provide assistance for a particular offense, or category of offenses, irrespective of whether the conduct would constitute an offense under the laws in the territory of both Parties;

b)    request relates to an offense that is a purely military offense;

c)    the execution of the request would prejudice the sovereignty, security, public order (ordre publique), important public policy or other essential interests of the Requested Party;

d)    the request relates to a political offense or the request is politically motivated or there are substantial grounds for believing that the request was made for the purpose of investigating, prosecuting, punishing, or otherwise proceeding against a person on account of the person's race, religion, nationality, or political opinions;

e)    the execution of the request would be contrary to the Constitution;

f)    the Requested Party has already rendered a final decision on the same suspect or defendant for the same offense as related to in the request; or

(g) the assistance requested lacks substantial connection with the case.

2.    Before denying assistance pursuant to this Article, the Central Authority of the Requested Party shall consult with the Central Authority of the Requesting Party to consider whether assistance may be granted subject to such conditions as it deems necessary.   If the Requesting Party accepts assistance subject to these conditions, it shall comply with the conditions.

4

3.    If the Central Authority of the Requested Party refuses assistance, it shall inform the Central Authority of the Requesting Party of the reasons for the refusal.

## Article 4

### Form and Contents of Requests

1.   The request shall include the following:

a)   the name of the competent authority conducting the investigation, prosecution, or proceeding to which the request relates;

b)   a description of the subject matter and nature of the investigation, prosecution, or proceeding, including a summary of relevant facts, the relevant provisions of laws, the specific criminal offenses which relate to the matter and any punishment that might be imposed for each offense;

c)   the purpose and relevance for which the evidence, information, or other assistance is sought.

d)   the time limit within which compliance with the request is desired; and

e)   a description of the evidence, information, or other assistance sought.

2.   To the extent necessary and possible, a request shall also include:

a)   information on the name, sex, nationality, occupation and location of any person from whom evidence is sought;

b)   information on the name, sex, nationality, occupation and location of a person to be served and that person's relationship to the proceedings;

c)   a precise description of the place or person to be searched;

d)   the information required for executing Article 14 of this Agreement;

e)   information as to the allowances and expenses to which a person asked to appear in the territory of the Requesting Party will be entitled;

6

f) the need for confidentiality and the reasons therefor;

g) a description of any particular procedure to be followed in executing the request;

h) a list of questions to be asked of a witness;

i) information on the identity and whereabouts of a person to be located; and

j) any other information which may facilitate execution of the request.

3. If the Requested Party considers the contents contained in the request not sufficient to enable the request to be dealt with, it may request additional information.

4. A request for assistance shall be in writing and affixed with the signature or seal of the Central Authority of the Requesting Party except that the Central Authority of the Requested Party may accept a request in another form in urgent situations. In any such case, the request shall be confirmed in writing within fifteen days thereafter unless the Central Authority of the Requested Party agrees otherwise.

5. A request for assistance and its supporting documents shall not require any form of certification or authentication.

## Article 5

### Language

Requests and the supporting documents made pursuant to this Agreement shall be accompanied by a translation in the language of the Requested Party, unless otherwise agreed by the Central Authorities.

## Article 6

### Execution and Postponement of Requests

1.    The Central Authority of the Requested Party shall promptly execute the request or arrange for its execution through the appropriate competent authorities.  The Requested Party shall do everything in its power to execute the request.

2.    The Central Authority of the Requested Party shall make all necessary arrangements for and meet the costs of the representation of the Requesting Party in the territory of the Requested Party in any proceedings arising out of a request for assistance.

3.    Requests shall be executed in accordance with the laws in the territory of the Requested Party.  Insofar as consistent with the laws in the territory of the Requested Party, the request for assistance shall be executed in the manner requested by the Requesting Party.

4.    If the Central Authority of the Requested Party determines that execution of a request would interfere with an ongoing criminal investigation, prosecution, or proceeding in that Party, it may postpone execution, or make execution subject to conditions determined necessary after consultations with the Central Authority of the Requesting Party.  If the Requesting Party accepts the assistance subject to the conditions, it shall comply with the conditions.

5.    The Central Authority of the Requested Party shall respond to reasonable requests by the Central Authority of the Requesting Party on progress toward execution of the request.

6.    The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the outcome of the execution of the request.  If the assistance requested cannot be provided or is postponed, the Central Authority of the Requested Party shall inform the Central Authority of the Requesting Party of the reasons.

9

## Article 7

### Confidentiality and Limitations on Use

1.    The Requested Party shall keep confidential a request and its contents, including any supporting documents, and any action taken pursuant to the request, if requested by the Requesting Party.  If confidentiality cannot be guaranteed or if the request cannot be executed without breaching such confidentiality, the Central Authority of the Requested Party shall so inform the Central Authority of the Requesting Party, which shall then determine whether the request should nevertheless be executed.

2.    The Requested party may require the Requesting Party to keep confidential the information or evidence provided by it, or to use such information or evidence only under the terms and conditions stated by it.  If the Requesting Party agrees to accept the information or evidence under the above-mentioned terms and conditions, it shall comply with them.  To this end, the Central Authorities of both parties may consult with each other on the terms and conditions concerned.

3.    The Requesting Party shall not use any information or evidence provided under this Agreement for any purpose other than for the case described in the request without the consent of the Central Authority of the Requested Party.

4.    Nothing in this Agreement shall preclude the use or disclosure of information to the extent that there is an obligation to do so under the Constitution or fundamental principles of law of the Requesting Party in a criminal prosecution.   The Requesting Party shall notify the Requested Party in advance of any such proposed disclosure.

5.    Information or evidence which has been made public in the territory of a Party in accordance with paragraph 1 or 2 will no longer be subject to confidentiality or to the requirements of paragraph 3 of this Article.

10

## Article 8

### Service of Documents

1.   Upon the request of the Requesting Party, the Requested Party shall use its best efforts to effect service of any document except that the Requested Party shall not be obligated to effect service of a document which requires a person to appear as the accused.

2.   The Requesting Party shall transmit any request for the service of a document requiring the appearance of a person before an authority in the Requesting Party no less than forty-five days before the scheduled appearance unless, in urgent cases, the Requested Party has agreed to a shorter period of time.

3.   The Requested Party shall, after effecting service, forward to the Requesting Party a proof of service that shall include the description of the date, place and manner of service, and be affixed with the signature or seal of the authority which served the document.  If, in a particular case, it is necessary to vary these requirements, the Requesting Party shall include such requirements in the request.  If service cannot be effected, the Requesting Party shall be so informed and advised of the reasons.

## Article 9

### Taking Evidence in the Requested Party

1.     A person in the territory of the Requested Party from whom evidence is requested pursuant to this Agreement shall be compelled, if necessary and in conformity with the laws in the territory of the Requested Party, to appear and testify or produce evidence, including documents, records, or articles.

2.     Upon request, the Central Authority of the Requested Party shall furnish information in advance about the date and place of the taking of the evidence pursuant to this Article.

3.     The Requested Party shall permit the presence of such persons as specified in the request during the execution of the request, and shall allow such persons to pose questions and make a verbatim transcript in a manner agreed to by the Requested Party insofar as not contrary to the laws in the territory of the Requested Party.

4.     If the person referred to in paragraph 1 asserts a claim of immunity, incapacity, or privilege under the laws in the territory of the Requesting Party, the evidence taking shall not be impeded and the claim shall be made known to the Central Authority of the Requesting Party for resolution by the authorities of that Party.

5.     Insofar as not contrary to the laws of the Requested Party, evidence produced pursuant to this Article shall be transmitted in a form or accompanied by such certification as may be requested by the Requesting Party in order to make it admissible according to the laws of the Requesting Party.

6.     When the request for assistance concerns the transmission of documents or records, the Requested Party may transmit certified copies or photocopies thereof.  However, where the Requesting party explicitly requires transmission of originals, the Requested Party shall meet the requirement to the extent possible.

## Article 10

### Records of Government Agencies

1.    The Requested Party shall provide the Requesting Party with copies of publicly available records, including documents or information in any form, in the possession of government departments and agencies in the territory of the Requested Party.

2.    The Requested Party may provide copies of any documents, records, or information which are in the possession of a government department or agency in that Party but which are not publicly available.  The Requested Party may in its discretion deny a request pursuant to this paragraph entirely or in part.

3.    Insofar as not contrary to the laws of the Requested Party, evidence produced pursuant to this Article shall be transmitted in a form or accompanied by such certification as may be requested by the Requesting Party in order to make it admissible according to the laws of the Requesting Party.

## Article 11

### Availability of Persons to Give Evidence or Assist in Investigation in the territory of the Requesting Party

1.    When the Requesting Party requests the appearance of a person to give evidence or assist in investigation in the territory of the Requesting Party, the Requested Party shall invite the person to appear before the appropriate authority in the territory of the Requesting Party.  The Requesting Party shall indicate the extent to which the expenses will be paid. The Central Authority of the Requested Party shall promptly inform the Central Authority of the Requesting Party of the response of the person.

2.    The Requested Party may request the Requesting Party to make a commitment that a person who has been asked to be present in the territory of the Requesting Party according to this Article not be prosecuted, detained, subject to service of process or subject to any other restriction of personal liberty, for any acts or omissions or convictions which preceded such person's entry into the territory of the Requesting Party, and that such person shall not be obliged to give evidence or assist in any investigation, prosecution or proceeding other than that to which the request relates, except with the prior consent of the Requested Party and such person.   The person whose presence is requested may decline to comply with the request if the Requesting Party does not grant such assurances.   If the Requesting Party grants assurances, it shall also specify the length of time and conditions under which such assurances shall apply.-

3.    A person who declines an invitation under this Article to give evidence or assist in an investigation shall not, by reason of so declining be liable to any penalty or subject to any compulsory measures of restriction of personal liberty.

14

## Article 12

### Transfer of Persons in Custody for Giving Evidence or Assisting in Investigations

1.    A person in the custody of the Requested Party whose presence in the territory of the Requesting Party is sought for purposes of assistance under this Agreement may be transferred from the Requested Party to the Requesting Party for that purpose if the person consents and if the Central Authorities of both Parties agree.

2.    A person in the custody of the Requesting Party whose presence in the territory of the Requested Party is sought for purposes of assistance under this Agreement may be transferred from the Requesting Party to the Requested Party if the person consents and if the Central Authorities of both Parties agree.

3.    For purposes of this Article:

a)    the receiving Party shall have the obligation, in accordance with its laws, to keep the person transferred in custody unless otherwise authorized by the sending Party;

b)    the receiving Party shall return the person transferred to the sending Party as soon as he finished giving evidence or assisting in investigations or within the period agreed by the Parties;

c)    the receiving Party shall not require the sending Party to initiate extradition proceedings for the return of the person transferred; and

d)    the person transferred shall receive credit for service of the sentence imposed in the sending Party for time served in the custody of the receiving Party.

15

## Article 13

### Location or Identification of Persons or Items

The Requested Party shall, in accordance with the request, endeavor to find out the location or identity of the person or item referred to in the request.  For this purpose, the Requesting Party shall provide information on the possible presence of the person or item in the territory of the Requested Party.

## Article 14

### Inquiry, Search, Freezing and Seizure

1.    The Requested Party shall, insofar as national law permits, execute a request for inquiry, search, freezing and seizure of evidential materials and articles.

2.    The Requested Party shall provide the Requesting Party with such information as may be required concerning the result of executing the above request and the subsequent custody of the materials and articles.

3.    If the Requesting Party agrees to the terms and conditions of transmission required by the Requested Party, the Requested Party shall transmit to the Requesting Party the materials and articles seized.

4.    The Central Authority of the Requested Party may require that the Requesting Party agree to the terms and conditions deemed necessary to protect third party interests in the item to be transferred.

5.    Insofar as not contrary to the laws of the Requested Party, information regarding custody, identity and condition of seized items shall be certified in a form as may be requested by the Requesting Party in order to make them admissible according to the laws of the Requesting Party.

17

## Article 15

### Return of Documents, Records, and Articles of Evidence to the Requested Party

The Central Authority of the Requested Party may require that the Central Authority of the Requesting Party return any documents, records, or articles of evidence furnished to it in execution of a request under this Agreement as soon as possible.

## Article 16

### Assistance in Forfeiture Proceedings

1.     If the Central Authority of one Party becomes aware of
proceeds or instrumentalities of offenses which are located in the
other Party and may be forfeitable or otherwise subject to seizure,
it may so inform the Central Authority of that other Party.   If
that other Party has jurisdiction in this regard, it may present
this information to its authorities for a determination whether any
action is appropriate.   These authorities shall issue their
decision in accordance with the laws in the territory of their
country, and shall, through their Central Authority, inform the
first Party of the action taken.

2.     The Parties shall assist each other to the extent
permitted by their respective laws in proceedings relating to the
forfeiture of the proceeds and instrumentalities of offenses.   This
may include action to temporarily immobilize the proceeds or
instrumentalities pending further proceedings.

3.     The Party that has custody over proceeds or
instrumentalities of offenses shall dispose of them in accordance
with its laws.   To the extent permitted by its own laws, and under
the terms and conditions agreed to by both Parties, a Party may
transfer all or part of such proceeds, or instrumentalities of
offenses, or the proceeds of the sale of such assets to the other
Party.

4.     In the application of this Article, the legitimate
rights of the Requested Party and any third party to such proceeds,
shall be respected under the laws of the Requested Party.

19

## Article 17

### Notification of Results of Proceedings in Criminal Matters

One Party shall, upon request, inform the other Party of results of criminal proceedings which were the subject of the Requesting Party's prior request under this Agreement.

20

## Article 18

### Exchange of Information

The Parties may, upon request, use this Agreement to consult on criminal justice matters, including informing each other of the laws in force or the laws which used to be in force and the judicial practices in their respective countries.

21

## Article 19

### Criminal Records

The Requested Party shall provide the Requesting Party with the criminal records and information of the sentence against the person being investigated or prosecuted in a criminal matter in the territory of the Requesting Party, if the person has ever been prosecuted for criminal liability in the territory of the Requested Party.

22

## Article 20

### Expenses

1.      The Requested Party shall pay the costs for executing the request, but the Requesting Party shall bear:

(a)   the allowances or expenses for the travel of persons under Articles 11 and 12 of this Agreement in accordance with the standards or regulations of the Requesting Party;

(b)   The allowances or expenses for persons to travel to and from and stay in the Requested Party under Article 9(3) of this Agreement;

(c)   the expenses and fees of experts; and

(d)   the costs of translations, interpretations, and transcription.

2.      If it becomes apparent that the execution of the request requires expenses of an extraordinary nature, the Parties shall consult to determine the terms and conditions under which the request can be executed.

## Article 21

### Other Bases for Cooperation

Assistance and procedures set forth in this Agreement shall not prevent either Party from granting assistance to the other Party through the provisions of other applicable international agreements, or through the provisions of its national laws.   The Parties may also provide assistance pursuant to any other arrangement, agreement, or practice which may be applicable.

## Article 22

### Consultation and Settlement of Disputes

1.    The Central Authorities of the Parties shall consult, at times mutually agreed to by them, to promote the most effective use of this Agreement.   The Central Authorities may also agree on such practical measures as may be necessary to facilitate the implementation of this Agreement.

2.    Any dispute arising out of the interpretation and application of this Agreement shall be resolved through diplomatic channels if the Central Authorities of both Parties are themselves unable to reach agreement.

## Article 23

### Entry Into Force, Modification and Termination

1.   Each Party shall inform the other by diplomatic note when all necessary steps have been taken under its laws for entry into force.  This Agreement shall enter into force upon the thirtieth day from the date of the later diplomatic note.  The Agreement shall remain in force for a period of three years, and shall renew for successive five year periods, unless either Party, within six months of the end of any such period, shall provide written notice to the other Party of its desire to enter into consultations for the purpose of modifying any provision of this Agreement.

2.   Either Party may terminate this Agreement at any time by means of written notice to the other Party through the diplomatic channel.  Termination shall take effect six months following the date of notification.

3.   This Agreement may be modified at any time by mutual written agreement between the Parties.

4.   This Agreement applies to any request presented after its entry into force even if the relevant offenses occurred before this Agreement enters into force.

IN WITNESS WHEREOF, the undersigned, being duly authorized by their respective Governments, have signed this Agreement.

DONE at Beijing this 19th day of June 2000, in duplicate, in the Chinese and English languages, both texts being equally authentic.

| | |
|---|---|
| For the Government of the United States of America: | For the Government of the People's Republic of China: |
| *s/G. Eugene Martin* | *s/Zhang Ye Sui* |
| G. Eugene Martin (Charge, American Embassy) | Zhang Ye Sui (Assistant Foreign Minister) |

26